FILED

2024 Aug-27  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| CANDICE E. SCISSUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00804-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Candice E. Scissum filed for review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for continued disability benefits. Doc. 1. Plaintiff Scissum was found eligible for disability benefits in April 2011 (Doc. 6-5 at 2–11), but on May 4, 2023, the Commissioner issued a final decision finding that Scissum no longer was disabled as of May 1, 2018 (Doc. 6-3 at 2–6, 24–49). In this appeal, the parties consented to magistrate judge jurisdiction. Doc. 9; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **REVERSES** and **REMANDS** the Commissioner's decision.

1

## ISSUES FOR REVIEW

In this appeal, Scissum argues that the court should reverse the Commissioner's decision for five reasons:  (1) the Administrative Law Judge (ALJ) failed to compare evidence of Scissum's condition in May 2018 with evidence of her condition in April 2011; (2) the Commissioner failed to meet the burden of showing medical improvement; (3) the ALJ's decision was not supported by substantial evidence; (4) the Appeals Council erred in denying review despite the receipt of additional evidence; and (5) the ALJ failed to properly evaluate several medical opinions.  Doc. 10.

Because the court will reverse and remand based on the ALJ's failure to compare evidence of Scissum's condition in May 2018—the relevant point in time for the ALJ's decision—with evidence of her condition at the time of the comparison point decision awarding benefits in April 2011, the court need not reach the merits of the other issues that Scissum raised in this appeal.

## STATUTORY AND REGULATORY FRAMEWORK

When applying for Social Security disability benefits, a claimant bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:   (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When an initial claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled.  The ALJ must determine the following:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment or combination of impairments;

(3)   if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)   if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)   if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

But when the issue is the continuation (or cessation) of previously granted disability benefits, an ALJ must follow a different evaluation process to determine whether a claimant's disability benefits should continue. *See* 20 C.F.R. § 404.1594(f). After an individual successfully applies for and is awarded Social Security benefits, the Commissioner periodically evaluates whether continuing benefits are warranted. 20 C.F.R. § 404.1594(a). The Commissioner may terminate a claimant's benefits if substantial evidence demonstrates that the physical or mental impairment for which benefits were initially provided has ceased, does not exist, or no longer is disabling. 42 U.S.C. § 423(f).

In this regard, the Commissioner has established an eight-step sequential evaluation process for determining whether a claimant's disability has ended. 20 C.F.R. § 404.1594(f). This eight-step continuing disability review process is similar to the five-step sequential evaluation process used for initial claims for benefits, with additional attention paid to whether there has been "medical improvement." *See* 20 C.F.R. §§ 404.1520, 404.1594(f). The ALJ must determine the following:

(1)   whether the claimant is engaging in substantial gainful activity;

(2)   if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

4

(3)     if impairments do not meet a listing, whether there has been medical improvement;

(4)     if there has been improvement, whether the improvement is related to the claimant's ability to do work;

(5)     if there is improvement related to the claimant's ability to do work, whether an exception to medical improvement applies;

(6)     if medical improvement is related to the claimant's ability to do work, or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7)     if the claimant has a severe impairment, whether the claimant can perform past relevant work; and,

(8)     if the claimant cannot perform past relevant work, whether the claimant can perform other work.

20 C.F.R. § 404.1594(f).

Medical improvement is a "decrease in the medical severity" of impairments that were present when the Commissioner last determined that the recipient was disabled or continued to be disabled; "[a] determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1); *see Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).  The ALJ must determine that there has been medical improvement before then proceeding with the remaining steps of the evaluation process. *See* 20 C.F.R. § 404.1594(f)(3).

Importantly, the Eleventh Circuit has conclusively established that "the

Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *Gombash v. Commissioner, Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir. 2014) (citing *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) ("[T]his court has held that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement.")).

The comparison of "old" and "new" evidence must include more than "specifically referr[ing] to the original medical evidence." *Freeman*, 739 F.2d at 566. Instead, the ALJ must "actually compare the old and new evidence," without "treat[ing] the case as though it were an original application for benefits." *Id.*

In other words, "[t]o terminate benefits, the Commissioner may not focus only on new evidence concerning disability, but must also evaluate the evidence upon which the claimant was originally found to be disabled." *Gombash*, 566 F. App'x at 859 (citing *Vaughn*, 727 F.2d at 1043). "Without a comparison of the old and new evidence, there can be no adequate finding of improvement." *Id.* (citing *Vaughn*, 727 F.2d at 1043).

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper

legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**B.**      With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## PROCEDURAL BACKGROUND

### A.      Initial award of benefits

On April 5, 2011, Scissum was awarded disability benefits when an ALJ entered a fully favorable decision, finding that Scissum was disabled beginning on November 21, 2008.  Doc. 6-5 at 2–11.  In that decision, and based on testimony and medical evidence (including records from Scissum's orthopedic surgeon), the ALJ found that Scissum was disabled because she had severe impairments of "status post bilateral carpal tunnel release; status post revision surgery of previous bilateral carpal tunnel release; obesity; hypertension; and depression," and because Scissum had the "inability to use the bilateral hands for grasping or handling on even an occasional basis" such that she could not work.  Doc. 6-5 at 8–11.

### B.      Cessation of benefits proceedings

On February 28, 2018, the Commissioner entered a decision at the initial level

finding cessation of Scissum's disability. Doc. 6-5 at 31; Doc. 6-6 at 2–4. Scissum requested reconsideration of that initial decision. Doc. 6-6 at 5–6. The decision that Scissum no longer was disabled and that her benefits would cease then was affirmed at the reconsideration level. Doc. 6-6 at 9–11.

On August 20, 2021, after conducting a hearing (Doc. 6-3 at 96–117), an ALJ entered an unfavorable decision finding that Scissum's disability had "ended as of May 1, 2008 [sic]." Doc. 6-5 at 35–50. However, on July 5, 2022, the Appeals Council remanded that decision back to an ALJ for further consideration for multiple reasons, including that the ALJ had found a date of cessation of disability which had predated the beginning of Scissum's period of disability. Doc. 6-5 at 59–62.

On October 26, 2022 (and after that remand), a different ALJ conducted a telephonic hearing on Scissum's continued benefits. Doc. 6-3 at 63–66. During the hearing, the ALJ elicited testimony from Scissum regarding her condition and abilities, and heard testimony from a vocational expert about the job prospects for an individual with Scissum's capacity for work. Doc. 6-3 at 65–89. During the hearing, Scissum asserted that her condition had worsened rather than improved since the point at which she initially was found eligible for benefits. Doc. 6-3 at 68–82.

## C.    ALJ decision

On November 29, 2022, the ALJ entered an unfavorable decision on

Scissum's eligibility for continued benefits.  Doc. 6-3 at 24–49.  The ALJ found that Scissum's "disability ended on May 1, 2018," and that Scissum had "not become disabled again since that date."  Doc. 6-3 at 29.

In the decision, the ALJ stated that the ALJ applied the eight-step evaluation process for assessing whether disability benefits should continue (*see* 20 C.F.R. § 404.1594(f)).  Doc. 6-3 at 29–30.  The ALJ found that Scissum's comparison point decision (or "CPD," i.e., the most recent favorable medical decision finding disability) was the April 5, 2011 decision.  Doc. 6-3 at 30.  The ALJ found that, at the time of the April 2011 decision, Scissum suffered from severe medically determinable impairments of "status post bilateral carpal release; status post revision of the previous bilateral carpal tunnel release; obesity; hypertension; and depression," and that Scissum had a residual functional capacity that was "limited to light work with an inability to use the bilateral hands for grasping or handling on even an occasional basis."  Doc. 6-3 at 30.  The ALJ found that Scissum had not engaged in substantial gainful activity through the date of the decision.  Doc. 6-3 at 30.

The ALJ then found that, since May 1, 2018, Scissum had the following medically determinable impairments:  "depression; obesity; rheumatoid arthritis; osteoarthritis of the bilateral hips; carpal tunnel syndrome; degenerative disc disease; carpal tunnel syndrome status post left release; osteoarthritis of the bilateral hands;

10

degenerative joint disease of the bilateral knees; glaucoma, cataracts; internal hemorrhoids; obstructive sleep apnea; status post rectocele repair; migraine headaches; asthma; gastroesophageal reflux disease; and hypertension." Doc. 6-3 at 30. In making that finding, the ALJ summarized and considered only medical evidence from May 2018 and thereafter, which addressed Scissum's symptoms during that time period. Doc. 6-3 at 30–36. The ALJ did note that, during a consultative examination with Dr. Janie Teschner on October 13, 2021, Scissum asserted that she was "worse than when she was awarded disability benefits," but the ALJ focused only on the results of Teschner's 2021 evaluation. Doc. 6-3 at 34. The ALJ found that, since May 1, 2018, Scissum did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations. Doc. 6-3 at 36–37.

The ALJ then found that "[m]edical improvement occurred on May 1, 2018," stating that "[t]he medical evidence supports a finding that, by May 1, 2018, there had been a decrease in medical severity of the impairments present at the time of the [comparison point decision in April 2011]." Doc. 6-3 at 37–38. The ALJ stated that Scissum's "carpal tunnel syndrome was found to be so limiting at the [comparison point decision] that the claimant could not use bilateral hands for grasping or handling on even occasional basis," but that "[m]edical evidence since the [comparison point decision] does not support a finding that the claimant continues

to have this level of limitation."  Doc. 6-3 at 38.

Citing only to treatment records from 2018 and thereafter, the ALJ found that Scissum was noted to have normal range of motion in her hands and wrists, normal motor findings, and only moderate symptoms in some of her treatment records.  Doc. 6-3 at 38.  Citing to a function report that Scissum submitted and psychological records from 2016 and thereafter, the ALJ then stated that Scissum also reported that she could drive, cook, wash clothes, clean, and take care of her children.  Doc. 6-3 at 38.  The ALJ found that, "while the record indicates that [Scissum] had an additional carpal tunnel release in December of 2021, [Scissum] had normal motor strength in subsequent treatment record[s] including in more recent treatment records from September of 2022," and that "[t]hese objective medical findings and her reported activities of daily living support a finding that [Scissum] has experienced medical improvement and do not indicate that she continues to be limited to less than occasional grasping or handling bilaterally."  Doc. 6-3 at 38.

The ALJ then found that Scissum had an updated, improved RFC because, since May 1, 2018, the impairments present at the time of the comparison point decision in April 2011 "had decreased in severity to the point where the claimant has had the residual functional capacity to [do] light work" with some adjustments.  Doc. 6-3 at 38.  In determining Scissum's updated RFC, the ALJ cited only to medical evidence from after April 2011, with the earliest evidence from 2014, and

most of the evidence from May 2018 and thereafter.  Doc. 6-3 at 38–39.

The ALJ found that Scissum's medical improvement was related to her ability to do work "because it resulted in an increase in [Scissum's] residual functional capacity."  Doc. 6-3 at 39.  The ALJ found that, "[b]ased on the impairments present at the time of the [comparison point decision in April 2011], the residual functional capacity [Scissum] has had since May 1, 2018 is less restrictive" than her RFC in April 2011.  Doc. 6-3 at 39.

After finding that Scissum had medical improvement, the ALJ proceeded to find that Scissum still had severe impairments and non-severe impairments, and restated the finding of Scissum's updated, less restrictive RFC.  Doc. 6-3 at 39–47. In considering Scissum's impairments and updated RFC, the ALJ did cite to some medical evidence predating April 2011, including evidence about Scissum's GERD, headaches, and joint pain, but the ALJ cited that evidence to indicate historic relatively normal findings and listed those exhibits along with more recent records postdating the comparison point decision in April 2011.  Doc. 6-3 at 40, 43.

The ALJ went on to find that, based on her updated RFC, Scissum could not perform her past relevant work.  Doc. 6-3 at 48.  But the ALJ found that, since May 1, 2018, and considering Scissum's age, education, work experience, and updated RFC, and the testimony from the vocational expert, there were jobs in significant numbers in the national economy that Scissum could perform.  Doc. 6-3 at 48–49.

Accordingly, the ALJ found that Scissum's disability ended on May 1, 2018, and that Scissum had not become disabled again through the date of the decision (November 29, 2022).  Doc. 6-3 at 49.

### D.    Appeals Council decision

Scissum sought review from the Appeals Council of the ALJ's unfavorable decision and submitted new evidence, including the results of a January 17, 2023 medical examination.  Doc. 6-3 at 20–23; Doc. 6-8 at 51–52.

On May 4, 2023, the Appeals Council declined to exhibit Scissum's additional evidence and denied Scissum's request for review of the ALJ's November 29, 2022 decision, finding no reason to review the ALJ's decision.  Doc. 6-3 at 2–6.  Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

In this appeal (and among other things), Scissum argues that, when addressing the issue of "medical improvement," the ALJ erred by failing to compare evidence of Scissum's condition in May 2018 with evidence of her condition in April 2011. Doc. 10 at 23–17.  Having carefully considered the record and the briefing, the court will reverse and remand because the ALJ erred as a matter of law by failing to compare the medical evidence underlying the comparison point decision in April 2011 with subsequent medical evidence, which is required to assess medical

improvement. Because that issue compels reversal, the court will pretermit consideration of the other issues that Scissum raised in this appeal.

As explained above, when assessing the continuation of previously awarded disability benefits, an ALJ must apply the eight-step process in 20 C.F.R. § 404.1594(f), rather than the usual five-step process in 20 C.F.R. § 404.1520(a)(4). Thus, when assessing continuation of benefits, the ALJ must consider the additional step of "medical improvement." *See* 20 C.F.R. §§ 404.1520, 404.1594(f)(3). Because the assessment of medical improvement depends on whether there has been a decrease in medical severity since the last determination of disability (i.e., the comparison point decision), and because "[a] determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)," the ALJ is required to analyze the claimant's symptoms, signs, and laboratory findings from before the comparison point decision. *See* 20 C.F.R. § 404.1594(b)(1); *Freeman*, 739 F.2d at 566; *Vaughn*, 727 F.2d at 1043.

Indeed, the Eleventh Circuit has made this requirement explicit, holding that "the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *Gombash*, 566 F. App'x at 859 (citing *McAulay*, 749 F.2d at 1500).

In this case, the comparison point decision granting benefits was issued in

April 2011, and found that Scissum was disabled largely on account of carpal tunnel impairments with her hands that prevented her from even occasional grasping or handling.  Doc. 6-5 at 2–11.  In assessing medical improvement in the final adverse decision at issue in this appeal, the ALJ correctly identified the comparison point decision from April 2011, and then found that medical improvement occurred on May 1, 2018; the ALJ found that "[t]he medical evidence supports a finding that, by May 1, 2018, there had been a decrease in medical severity of the impairments present at the time of the [comparison point decision in April 2011]."  Doc. 6-3 at 30, 37–38.

But, in arriving at the finding that there had been medical improvement (and in finding Scissum's impairments as of May 2018), the ALJ did not consider or cite to any evidence predating the April 2011 comparison point decision.  *See* Doc. 6-3 at 30–38.  The closest that the ALJ came to mentioning evidence underlying the April 2011 comparison point decision was to note that Scissum told Dr. Teschner in 2021 that she was worse than when she initially was awarded benefits, but the ALJ only focused on the results of Dr. Teschner's 2021 examination, not any evidence of Scissum's condition before the April 2011 comparison point decision.  Doc. 6-3 at 34.

As a matter of law, the ALJ was required to consider the old and new evidence in order to properly address medical improvement before moving on with the eight-

step process for assessing continuing disability.  *See* 20 C.F.R. § 404.1594(f)(3).

The ALJ did not do so.  Nor does the remainder of the ALJ's decision—after the

medical improvement determination—show anything that could constitute adequate

consideration of evidence predating the April 2011 comparison point decision.

While the ALJ did cite some medical evidence predating April 2011 in determining

Scissum's impairments and updated RFC, that evidence showed relatively normal

findings and was listed along with more recent evidence showing normal findings.

So, not only do those citations lack any comparison between old and new evidence,

but also those citations suggest consistency—rather than improvement—between

evidence predating and postdating the comparison point decision in April 2011.

Doc. 6-3 at 40, 43.

The Commissioner argues that the ALJ properly evaluated Scissum's medical

improvement by comparing and considering Scissum's condition before April 2011

and her condition in May 2018, because the ALJ "noted the Plaintiff's impairments

in 2011 limited her to light work with an inability to use the bilateral hands for

grasping or handling on even an occasional basis," and because substantial evidence

supported the ALJ's finding.  Doc. 13 at 5–6.  The Commissioner then points to the

evidence on which the ALJ relied in determining Scissum's capacity in May 2018,

and argues that the evidence after May 2018 showed improved capacities.  Doc. 13

at 6–7.  But this argument does not address—much less refute—Scissum's argument

that the ALJ failed to perform the required comparison of *evidence* predating the April 2011 comparison point decision and the more recent evidence.

As the Commissioner points out, the ALJ did compare Scissum's impairments and RFC as found by an ALJ in April 2011 and evidence of Scissum's medical condition and capacity in May 2018 and thereafter. *See* Doc. 6-3 at 30–39; Doc. 13 at 5–7. In other words, the ALJ compared Scissum's *limitations* at the time of the comparison point decision with evidence of her condition and limitations after May 1, 2018. Doc. 6-3 at 38. But simply comparing past limitations with more recent evidence is not enough. Instead, the ALJ "must compare *the medical evidence* supporting the most recent final decision holding that the claimant is disabled with new medical evidence" because, "[w]ithout a comparison of *the old and new evidenc*e, there can be no adequate finding of improvement." *Gombash*, 566 F. App'x at 859 (emphasis added).

Further, the Eleventh Circuit requires more than just a specific reference to the original medical evidence supporting the comparison point decision; there must be an actual comparison. *Freeman*, 739 F.2d at 566.

Here, when assessing medical improvement, the ALJ did not conduct any actual comparison of old and new evidence, and did not include even a bare reference to the original evidence supporting the April 2011 decision. *See* Doc. 6-3 at 30–39. Rather, the ALJ impermissibly "focus[ed] only on new evidence concerning

disability." *Gombash*, 566 F. App'x at 859.  So, while it appears that the ALJ provided a thorough review of the new evidence relating to Scissum's continued disability, there still is no comparison between old and new evidence.  Without that required comparison (much less any meaningful comparison), there could be no adequate finding of medical improvement, and the case must be remanded.  *See id.*

Because the court will reverse and remand for further consideration of whether a comparison of the old and new evidence would support a finding of medical improvement, the court pretermits consideration of the other issues that Scissum raised in this appeal.  As noted above, Scissum also has argued that the Commissioner did not meet its burden of showing medical improvement, that the ALJ's decision was not supported by substantial evidence, that the Appeals Council erred in denying review, and that the ALJ failed to properly evaluate several medical opinions.  Doc. 10.

But the court need not—and will not—reach these issues.  *See Demenech v. Secretary of Dep't of HHS*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (court need not consider other issues when remanding); *accord Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam).

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the Commissioner's decision is **REVERSED** and **REMANDED** for further

proceedings consistent with this memorandum opinion.  The court separately will enter final judgment.

**DONE** and **ORDERED** this August 27, 2024.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE